## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CHICAGO NEWSPAPER LIQUIDATION | ) Case No. 09-11092 (CSS) |
| CORP., *et al*, | ) Jointly Administered |
| | ) |
|     Debtors. | ) |
| | ) |
| HAMIN KHATIB, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) Adv. Proc. No. 12-50900 (CSS) |
| | ) |
| SUN-TIMES MEDIA GROUP, INC., | ) |
| | ) |
|     Defendant. | ) |

## OPINION[1]

| | |
|---|---|
| YOUNG CONAWAY STARGATT | Hamin Khatib |
| & TAYLOR, LLP | 15518 Lexington |
| Jaime Luton Chapman | Harvey, IL  60426 |
| Edmon L. Morton | |
| Sean M. Beach | Pro Se Plaintiff |
| Rodney Square | |
| 1000 North King Street | |
| Wilmington, DE  19801 | |
|     - and - | |
| KIRKLAND & ELLIS LLP | |
| James H.M. Sprayregen, P.C. | |
| James A. Stempel | |
| Stephen C. Hackney | |
| Inbal Hasbani | |
| 300 North LaSalle Street | |
| Chicago, IL 60654 | |

---

[1] "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 . . . ." Fed. R. Bankr. P. 7052(a)(3).  Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

Counsel For The CNLC Liquidating Trust

Dated:  April 3, 2013

Sontchi, J. _____

## INTRODUCTION

Before the Court is a complaint filed by Hamin Khatib ("Plaintiff") against Chicago Newspaper Liquidation Corp. Liquidating Trust ("Liquidating Trust"), formally known as Sun-Times Media Group, Inc. ("STMG") (The Court refers to the Liquidating Trust (f/k/a STMG) as the "Defendant").  In the complaint, the Plaintiff claims copyright infringement, patent infringement, unfair competition, trade secret misappropriation, unjust enrichment and other various common law claims related to an "Iqraa Front-Backpack" designed by Plaintiff.  The Liquidating Trust moved to dismiss these claims because: (1) the claims asserted in Plaintiff's complaint are time barred by applicable bar dates set by the Bankruptcy Court; (2) the Plaintiff fails to allege sufficient facts to state claims upon which relief may be granted; and (3) Plaintiff failed to serve Defendant with the adversary complaint.

As set forth more fully below, the Court denies the motion dismiss, in part, and grants the motion, in part.  The Court denies the motion on the basis that the (i) Plaintiff's claims are time barred and (2) Plaintiff failed to serve the Defendant.  The Court grants the motion to dismiss with prejudice as the Plaintiff has failed to state plausible claims upon which relief may be granted pursuant to Rule 12(b)(6).  As a result, the case will be dismissed with prejudice in its entirety.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and this Court has the judicial power to enter a final order.

## BACKGROUND

### I.    The Bankruptcy Case

On March 31, 2009 ("Petition Date"), Chicago Newspaper Liquidation Corp. ("CNLC"), formerly known as STMG, along with a number of other affiliated entities (collectively, the "Debtors"), commenced proceedings in this Court under Chapter 11 of the Bankruptcy Code.  Shortly thereafter, the Debtors sought approval from the Court to sell substantially all of their assets under Section 363 of the Bankruptcy Code.  On October 8, 2009, the Court entered an Order ("Sale Order") that approved a sale to STMG Holdings, LLC, free and clear of all liens, claims, encumbrances and other interests.  Thereafter, STMG became a non-operational entity with no operating business assets.

Subsequently, on August 17, 2011, a plan of liquidation was confirmed by the Court (the "Plan").  Thereafter, the Plan became effective (the "Effective Date"). Pursuant to the Plan, as of the Effective Date, the Liquidating Trust was formed and became responsible for resolving all disputed claims, pursuing or otherwise litigating any causes of action filed against the Debtors, and making all distributions provided for under the Plan.  Under the terms of the Plan, all of the value of the Debtors' estates was

3

distributed to holders of administrative and priority tax claims. Holders of general unsecured claims are not entitled to any distribution.[2]

## II.    The Claims Bar Dates

Several claim bar dates were set by the Court in the Debtors' cases. On July 15, 2009, the Court entered an Order ("Prepetition Claims Bar Date Order") establishing September 30, 2009 ("Prepetition Claims Bar Date") as the deadline to file prepetition non-governmental claims against the Debtors' estates.[3] Subsequently, on November 24, 2009, the Court entered an Order ("Administrative Claims Bar Date Order") establishing January 8, 2010 ("Administrative Claims Bar Date" and together with the Prepetition Claims Bar Date, the "Bar Dates") as the deadline to file administrative claims that had arisen from the Petition Date through November 6, 2009 against the Debtors' estates. [4]

---

[2] Plan Art. II.B.3.

[3] The publication notice regarding the Prepetition Claims Bar Date provided:

> Except as to certain exception explicitly set forth in the [Prepetition Claims] Bar Date Order, any person or entity who fails to file a proof of claim on or before the applicable Bar Date shall be (1) **forever barred from asserting that claim** (or filing a proof of claim with respect to that claim) (or filing a proof of claim with respect to that claim) and the debtors and their property will be discharged from any and all liability with respect to that claim; (2) barred from receiving any distribution in these chapter 11 cases on account of that claim . . .

D.I. No. 426 and 427 (emphasis added). The Plan also disallowed and expunged proofs of claim filed after the applicable Bar Dates as of the Effective Date. *See* Plan Art. V.B.

[4] After the Section 363 sale closed, the Debtors' estate became a liquidating estate with few assets and no operations other than estate administration. The Debtors' Plan established a second administrative claims bar date of October 31, 2011 by which all holders of administrative claims against the *liquidating estate* were required to file proofs of claim. This second administrative claims bar date is not relevant to the Court's opinion because the Plaintiff's does not allege any post-sale claims against the liquidating estate.

Both the Prepetition Bar Date Order and the Administrative Claims Bar Date Order provided that actual notice be served on all "known" holders of claims, and that publication notice also be made.  According to affidavits of service filed by the Debtors, Plaintiff was not served with notice of either bar date.[5]  Moreover, an affidavit of publication reflects that publication notice was made for the Prepetition Bar Date, however no such affidavit was filed regarding the Administrative Claims Bar Date.[6]

The Plaintiff did not file any proofs of claim in the Debtors' cases.

## III.    The Adversary Proceeding

On September 27, 2012, the Plaintiff initiated the above-captioned adversary proceeding.   The Plaintiff's allegations premised on the (alleged) misappropriation by the Defendant of Plaintiff's design and invention of the "Iqraa Front-Backpack."

The Plaintiff asserts that in 2002, in order to provide a relief from the burden of heavy books carried by grammar school and high school aged students, and its resulting pack pain, Plaintiff invented the "Iqraa Front-Backpack."[7]  For the next year or so, Plaintiff sold the Iqraa Front-Backpack through door-to-door sales, and then later out of various retail locations.   Although Plaintiff applied for patent protection for his design in April 2004, Plaintiff concedes that he never obtained a patent.  In December

---

[5]  *See* Prepetition Claims Bar Date, D.I. 375, 381, 382, 476, and 562; Administrative Claims Bar Date, D.I. 679 and 719.

[6]  *See* Prepetition Claims Bar Date Affidavit of Publication, D.I. 426 and 427.

[7]  The Iqraa Front-Backpack was also referred to in Plaintiff's complaint as the "Iqraa design front-back pack," "Iqraa front backpack," "Iqraa front pack," and "Iqraa front back-pack."

2004, Plaintiff noticed a STMG vendor wearing a "ragged vest very much unlike [the] Iqraa front-backpack."  Plaintiff invited the vendor to his store and showed him the Iqraa Front-Backpack and gave the vendor a sample and information for the vendor to give to his STMG supervisors.  The next day, Plaintiff met the same STMG vendor, who allegedly told Plaintiff that his boss took the Iqraa Front-Backpack from him and told him never to wear it again.  Then, in or about October 2008, Plaintiff discovered that STMG vendors were wearing packs resembling the design of the Iqraa Front-Backpack to sell and advertise newspapers which is the crux of this adversary proceeding.

## IV.    Other Actions by Plaintiff Against Defendant

The Court is aware of two additional lawsuits Plaintiff has brought against Defendant.[8]  First, on February 9, 2009, prior to the Petition Date, Plaintiff sued Defendant in the Circuit Court of Cook County Law Division.[9]  That case was later stayed by the Debtors' bankruptcy.  It is unclear from the docket in that case whether the Defendant was served with Plaintiff's complaint.  Second, in or around June, 2010, after the Petition Date, Plaintiff again sued Defendant, this time in the United States

---

[8]  Defendant's reply brief (Adv. D.I. 18 (Exhs. A and B)).  The Court takes judicial notice of the docket in each of these two prior actions.  *See, e.g., Diceon Elecs., Inc. v. Calvary Partners, L.P.*, 772 F. Supp. 859, 861 (D. Del. 1991) (quoting Fed. R. Evid. 201(b)(2)) ("On a motion to dismiss the Court is free to take judicial notice of certain facts that are of public record if they are provided to the Court by the party seeking to have them considered. . . 'A judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'").

[9]  Case No. 2009-L-001479.

District Court for the Northern District of Illinois.[10]   The judge in that case, by court

order, declined to move forward because of the automatic stay.

## V.    Defendant's Motion to Dismiss

On November 16, 2012, the Liquidating Trust filed a motion to dismiss

Plaintiff's complaint.   The Liquidating Trust moved to dismiss these claims because:

(1) Plaintiff failed to file a timely proof of claim bars the claims in the complaint;

(2) Plaintiff's complaint does not allege sufficient facts to state claims upon which relief

may be granted; and (3) Plaintiff failed to serve Defendant with the adversary

complaint.

## DISCUSSION

## I.    Motion to Dismiss the Complaint Pursuant to Rule 12(b)(6)

### A.  Rule 12(b)(6) Standard

Rule 12(b)(6) governs a motion to dismiss for failure to state a claim upon

which relief can be granted.[11]   When reviewing a motion to dismiss, the movant carries

the burden of demonstrating that dismissal is appropriate.[12]   The relevant record to

consider consists of the complaint and any document "integral or explicitly relied on in

the complaint."[13]

---

[10]  Case No. 1:10-cv-03979.

[11]  Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b).

[12]  *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*, 496 F. Supp. 2d 404, 408 (D.Del. 2007).

[13]  *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (*citing In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

To survive a Rule 12(b)(6) motion to dismiss, the factual allegations in the complaint must "state a claim to relief that is plausible on its face."[14]  This plausibility standard requires a plaintiff to demonstrate "more than a sheer possibility that a defendant has acted unlawfully."[15]  The Third Circuit Court of Appeals has outlined a two-part analysis to determine the sufficiency of a complaint under *Twombly* and *Iqbal*:

> First, the factual and legal elements of a claim should be separated.  The [court] must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, the [court] must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to show such an entitlement with its facts… This plausibility determination will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.[16]

The Third Circuit has further instructed that "[s]ome claims will demand relatively more actual detail to satisfy this standard, while others require less."[17]

---

[14]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *See also White v. New Century TRS Holdings, Inc. (In re New Century TRS Holdings, Inc.)*, 450 B.R. 504, 511 (Bankr. D. Del. 2011) ("*New Century I*") ("The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case.").

[15]  *Iqbal*, 556 U.S. at 678; *See also Conley v. Gibson*, 355 U.S. 41 (1957) (a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief).

[16]  *New Century I*, 450 B.R. at 511 (*quoting Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and punctuation omitted)); *See also Evancho v. Fisher*, 423 F. 3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.").

[17]  *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 320 n. 18 (3d Cir. 2010) (citations omitted).

**B. *Effect of Bar Dates on the Claims Asserted in Plaintiff's Complaint***

As stated above, the Defendant argues that the claims asserted in Plaintiff's complaint are time barred. The Plaintiff claims that he did not receive notice of the Bar Dates.

In *In re Grossman's Inc.*,[18] the Third Circuit held that a "claim" arises when "an individual is exposed pre-petition to . . . conduct giving rise to an injury, which underlies a 'right to payment' under the Bankruptcy Code."[19] The *Grossman's* Court recognized that the test to determine whether a claim is subject to a claims' bar date must also be reviewed in light of due process considerations.[20] "Determining whether the discharge of claims satisfies due process includes an inquiry into the adequacy of notice of the claims bar date."[21] The purpose and procedures for setting a claims bar date were discussed by Judge Gross in *In re Smidth & Co.*:

> Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedures authorizes courts to set bar dates by which proofs of claim or interest may be filed. This rule contributes to one of the main purposes of bankruptcy law, securing, with a limited time, the prompt and effectual administration and settlement of the debtor's estate. Setting an outside limit for the time to assert a right triggers due process concerns of which every court must be cognizant. This concern is resolved through notice: when a debtor provides proper notice to its creditors, due process is satisfied, and a court can bar creditors from asserting claims. What qualifies as proper notice, however, is dependent upon whether the

---

[18] *In re Grossman's Inc.*, 607 F.3d 114 (3d Cir. 2010).

[19] *Id.* at 125.

[20] *Id.*; *see also In re New Century TRS Holdings, Inc.*, 465 B.R. 38, 45 (Bankr. D. Del. 2012) ("*New Century II*").

[21] *New Century II*, 465 B.R. at 45 (*citing Grossman's*, 607 F.3d at 127).

creditor is *known or unknown*.  If a creditor is known, the debtor must provide actual notice of the bankruptcy proceedings, whereas if the creditor is unknown, notice by publication is sufficient.[22]

"For creditors who receive the required notice, the bar date is a drop-dead date that prevents a creditor from asserting [their applicable] claims unless [they] can demonstrate excusable neglect."[23]

A known creditor is one whose identity is either known or reasonably ascertainable by the debtor.[24]  An unknown creditor, on the other hand, is one whose interests are either conjectural or future or, although they could be discovered upon investigation, do not in the due course of business come to the knowledge of the debtors.[25]

Here, although the Plaintiff sued Defendant in 2009, prior to the Petition Date, it is not clear from the docket in that case whether the complaint was served on the Defendant.  If the 2009 lawsuit *was* served on Defendant, and such service took place prior to the Prepetition Bar Date, then Plaintiff would have been a "known" creditor and the publication notice he received would not have been sufficient.  On the other hand, if the 2009 lawsuit *was not* served on Defendant, *or* if service was made, but not before the Prepetition Bar Date, then Plaintiff would have been an unknown

---

[22] *In re Smidth & Co.*, 413 B.R. 161, 165 (Bankr. D.Del. 2009) (emphasis added) (*citing Chemetron Corp. v. Jones*, 72 F.3d 341, 346-46 (3d Cir. 1995)).

[23] *New Century I*, 450 B.R. at 512 (*citing Berger v. TransWorld Airlines, Inc. (In re TransWorld Airlines, Inc.)*, 96 F.3d 687, 690 (3d Cir. 1996) (internal quotations omitted)).

[24] *Chemetron*, 72 F.3d at 346 (*citing Tulsa Professional Collection Serv., Inc. v. Pope*, 485 U.S. 478 (1988) (internal quotations omitted)).

[25] *Id.* (*quoting Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317 (1950) (internal quotations omitted)).

creditor and the publication notice he received would have been adequate. The same analysis applies to the Administrative Claims Bar Date; however, it is not clear whether publication notice was made as no affidavit of publication related to the Administrative Claims Bar Date was filed with the Court.

As a result, the Court finds that there are insufficient facts to determine whether the Plaintiff was a known creditor, and thus, the Court is unable to determine whether Plaintiff received adequate notice of the Bar Dates. Without evidence, due process requires that the Court not time bar the Plaintiff's claims. As such, the Court denies the motion to dismiss, without prejudice, for failure of the Plaintiff to file a proof of claim.[26]

### C.  Sufficiency of Plaintiff's Allegations in the Complaint

The Defendant also asserts that Plaintiff's allegations are not plausible and, as a result, the complaint fails to state claims upon which relief may be granted.[27] The Court has accepted, for the purposes of this motion, that the factual allegations in the complaint are true and has construed the complaint in the light most favorable to the Plaintiff;[28] however, the Court cannot consider (for purposes of this motion) any

---

[26]  Claims on account of prepetition liability did not receive payment pursuant to the Plan. As such whether the claims are time barred may be irrelevant. *See* Plan Art. II.B.3.

[27]  Because the Court finds that Plaintiff cannot recover anything on account of prepetition claims, the remainder of this Opinion is limited in scope to administrative claims Plaintiff may have against the Debtors' Estates.

[28]  *Flowler*, 578 F.3d at 210-11 (*citing Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

bald assertions and legal conclusions alleged by the Plaintiff.[29]   As set forth in more

detail below, the Court finds that the Plaintiff's claims are not plausible.

### i.   The Federal Copyright Infringement Claim

The Plaintiff alleges that the design of the Iqraa Front-Backpack was

subject to copyright protection which the Defendant violated by having similar front-

backpacks.  In order to state a claim for copyright infringement, the plaintiff must show:

(1) ownership of a valid copyright, and (2) actionable copying.[30]   One can only own a

valid copyright in works of authorship, which include works that are literary, musical,

dramatic, pantomime, choreographic, pictoral, graphic, sculptural, motion picture,

audiovisual, sound, and architectural.[31]   Useful articles, meaning articles that have an

intrinsic utilitarian function, and the designs thereof, are not considered works of

authorship except and only to the extent that such design incorporates pictoral, graphic,

---

[29]  *Starkes v. Mcgrath*, CIVA10-519 (MLC), 2010 WL 1463209, *5 (D.N.J. Apr. 12, 2010) (*citing Flowler*, 578 F.3d at 210-11).

[30]  *Galiano v. Harrah's Operating Co.*, No. 00-0071 Section: E/5, 2004 U.S. Dist. LEXIS 8265 at *13 (E.D. La. 2004) *aff'd*, 416 F.3d 411 (5th Cir. 2005).

[31]  The Copyright Act, 17 U.S.C. § 102(a), provides the following:

> Copyright protection subsists in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include pictorial, graphic, and sculptural works ....

The Copyright Act, 17 U.S.C. §101, defines a pictorial, graphic and sculptural work ("PGS") as:

> Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article, as defined in this section, shall be considered a [PGS] work only if, and only to the extent that, such design incorporates [PGS] features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.[32]

For example, in *Galiano v. Harrah's Operating Co., Inc.*,[33] the plaintiff asserted a copyright on uniforms she designed.  The Fifth Circuit adopted the "likelihood of marketability" test, holding that "conceptual separability exists where there is substantial likelihood that even if the article had no utilitarian use it would still be marketable to some significant segment of the community simply because of its aesthetic qualities."[34]  The court distinguished extravagant designs that might also have utilitarian qualities – such that they could be marketed as art rather than as clothing – and held that the plaintiff's uniforms, although creative, could not demonstrate such.[35]

Here, nothing in Plaintiff's complaint suggests that the Iqraa Front-Backpack is anything but purely utilitarian in nature – the Plaintiff has not asserted that the Iqraa Front-Backpack is capable of existing independently of its utilitarian function of carrying items.  As such, the design of the Iqraa Front-Backpack is not a work of

---

[32] 17 U.S.C. § 101; *Galiano*, 2004 U.S. Dist. LEXIS 8265 at *31 (finding that Plaintiff did not own a valid copyright in her casino uniform *designs*, notwithstanding the fact that Plaintiff held a certificate of registration for the sketches of those designs, because the artistic design feature of the uniforms depicted in the sketches could not be "conceptually separated from their function to advance the utilitarian purpose of the clothing.").

[33] 416 F.3d 411 (5th Cir. 2005).

[34] *Id.* at 419 (quoting 1 Nimmer on Copyright § 2.08(B)(3)).  Due to the difficulty a court might have in applying this test, the Fifth Circuit acknowledged that that test "might be a sub-optimal prophylactic rule." *Id.* at 421.

[35] *Id.* at 423.  *See also that Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 808 F. Supp. 2d 542, 552 (S.D.N.Y. 2011) *aff'd sub nom. Jovani Fashion, Ltd. v. Fiesta Fashions*, 12-598-CV, 2012 WL 4856412 (2d Cir. Oct. 15, 2012) *cert. denied*, 12-863, 2013 WL 171089 (U.S. Mar. 18, 2013) (holding that a prom dress was not protectable by copyright) and *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.*, 95 F.R.D. 95, 99 (D. Del. 1982) (denying summary judgment as there was a genuine issue of material fact concerning whether the eyeglass displays were sculptural and capable of existing independently of their utilitarian aspects).

authorship in which Plaintiff can own a valid copyright.  Furthermore, Plaintiff has not alleged that he owns a valid copyright in the design of the Iqraa Front-Backpack, and as a result, the Plaintiff's copyright claim is not plausible and will be dismissed.[36]

### ii.    The Federal Patent Infringement Claim

The Plaintiff also alleges that the Defendant infringed his patent in the Iqraa Front-Backpack.  However, the Plaintiff, by his own concession, does not hold a patent for the Iqraa Front-Backpack.[37]  "Standing to sue for infringement generally rests with the legal title holder to the patent."[38]  Failure to hold a patent is fatal to a patent infringement cause of action.[39]  As such, the Plaintiff has not alleged a plausible patent infringement claim and the Court will dismiss this claim.

---

[36]  The Court recognizes that annexed to Plaintiff's complaint is a Certificate of Registration issued by the United States Copyright Office ("Certificate") for a work entitled the "Iragráa Front Back Pack." The top right hand corner of the Certificate indicates that it is for a "Nondramatic Literary Work."  And, the Certificate further indicates that the "Type of Authorship in [the] Work" includes "Text", "Illustrations" and "Photographs."  The Court notes that the Certificate is of no consequence to its ultimate finding that Plaintiff may not own a valid copyright in the design of the Iqraa Front-Backpack.  Not only is the Certificate for a work bearing a different name than that which is the subject of Plaintiff's complaint, the Certificate is clearly limited to those aspects of the work in which the copyright law affords protection, namely text, illustrations and photographs.

The Court further notes that Plaintiff has brought similar claims against the Chicago Tribune and Red Street Ventures for copyright infringement of his "Iqraa Next Frontier All Purpose Strap" and "Iqraa front backpack" designs, respectively.  *See Khatib v. Red Street Ventures*, No. 11 C03686 (N.D. Ill. June 1, 2011) and *Khatib v. Chicago Tribune*, No. 11 C 3687 (N.D. Ill. June 1, 2011).  In each of those cases, the Illinois court dismissed Plaintiff's complaint for failure to state a claim for copyright infringement.

[37]  *See* Complaint at ¶ 30 ("[t]he Patent was not issued . . . ").

[38]  *Pfizer Inc. v. Elan Pharm. Research Corp.*, 812 F. Supp. 1352, 1356 (D. Del. 1993) (*citing Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1579 (Fed. Cir. 1991) ("The general rule is that one seeking to recover money damages for infringement of a United States patent (an action "at law") must have held the *legal title* to the patent *during the time of the infringement*." (emphasis supplied)).

[39]  *See* 35 U.S.C. § 281 ("A patentee shall have remedy by civil action for infringement of his patent."); 35 U.S.C. § 271(a) ("Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States… infringes the patent."); *See also Asius Techs., LLC v. Sonion US, Inc.*, 835 F. Supp. 2d 554, 557 (N.D. Ill. 2011)(*citing Enzo APA & Son, Inc. v. Geapag, A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998) (stating that "only a patentee, an assignee, or a 'virtual

### iii.    The Federal Unfair Competition Claim

Next, the Plaintiff alleges unfair competition pursuant to Section 43(a) of the Lanham Act.[40]  To state a claim under Section 43(a) of the Lanham Act:

> [A] plaintiff must allege that: (1) defendant made false or misleading statements as to its products, or those of the plaintiff; (2) there was actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) the deception was material in that it is likely to influence purchasing decisions; (4) the advertised goods traveled in interstate commerce; and (5) there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.[41]

"Congress' purpose in enacting § 43(a) was to create a special and limited unfair competition remedy . . . ."[42]

Here, the Plaintiff has not alleged factual allegations to support the requisite elements set forth above.   Moreover, Defendant's business was selling information via newspapers and the Internet *not* the business of selling backpacks; as a result, the Defendants' business never competed, fairly or unfairly, with the Plaintiff's business.   The Plaintiff has not pled a plausible claim for unfair competition and the Court will dismiss this claim.

---

assignee' has standing to sue for patent infringement"); *Pittway Corp. v. BRK S'holders' Comm.*, 444 F. Supp. 1210, 1214 (N.D. Ill 1978) *aff'd*, 588 F.2d 835 (7th Cir. 1978) ("[A]lthough 35 U.S.C. § 271 allows for suits to prevent the infringement of patents, nowhere in the patent laws is a cause of action created for the alleged infringement of an invention that has never been patented.").

[40] 15 U.S.C. § 1125(a).

[41] *Nokia Corp. v. Interdigital Commc'ns*, No. Civ.A. 05-16-JJF, 2005 WL 3525696 at *5 (D. Del. Dec. 21, 2005) (*citing Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms., Inc.*, 19 F.3d 125, 129 (3d Cir. 1994)); 15 U.S.C. § 1051 *et seq.*

[42] *Colligan v. Activities Club of New York, Ltd.*, 442 F.2d 686, 692 (2d Cir. 1971).

### iv.     The Trade Secret Misappropriation Claim

The Plaintiff alleges that the Iqraa Front-Backpack is a trade secret that the Defendant misappropriated.  In Illinois, where the alleged misappropriation took place, trade secret misappropriation is governed by the Illinois Trade Secrets Act, 765 ILCS 1065/1, *et seq.* ("ITSA").   In order to state a claim for trade secret misappropriation under ITSA "a plaintiff must allege facts that the information at issue was: (1) a trade secret; (2) misappropriated; and (3) used in the defendant's business."[43]   Trade secrets are defined by the ITSA as information that (1) derives economic value from not being known to the public, and (2) is the subject of reasonable efforts to maintain its secrecy.[44]

Here, Plaintiff has not alleged that his design was kept confidential or secret – in fact, the Plaintiff states that he sold in excess of 1000 of these backpacks and his design was featured in various newspaper articles.[45]   Furthermore, the backpack design is readily ascertainable simply by viewing and studying the product itself. Moreover, by applying for patent protection and effectively publishing the design, Plaintiff is precluded from plausibly claiming that the design was secret or the subject of reasonable efforts to maintain its secrecy.[46]   As such, the Plaintiff has not asserted a plausible claim for trade secret misappropriation and this claim will also be dismissed.

---

[43] *Arcor, Inc. v. Haas*, 363 Ill. App. 3d 396, 400 (2005) (*citing Strata Marketing, Inc. v. Murphy*, 317 Ill. App. 3d 1054, 1068 (2000).

[44] *See* 765 ILCS 1065/2(d).

[45] *See* Complaint at ¶ 3 and 4, Exhs C, E and F.

[46]  *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002, 104 S. Ct. 2862, 2872, 81 L. Ed. 2d 815 (1984) ("the intangible nature of a trade secret, the extent of the property right therein is defined by the extent to

### v.   The Unjust Enrichment Claim

The Plaintiff has also asserted that the Defendant has failed to remit any profits realized from the use of this backpack "to facilitate and increase the circulation of daily newspapers" to the Plaintiff and, as a result, the Defendant is unjustly enriched. Unjust enrichment is a quasi-contract theory that

> permits courts to imply the existence of a contract where none exists in order to prevent unjust results.  To state a claim for unjust enrichment, the plaintiff must allege that the defendant retained a benefit to the plaintiff's detriment, and that the retention of that benefit violates fundamental principles of justice, equity, and good conscience.[47]

Here, there is nothing in Plaintiff's complaint that shows Defendant received a benefit or retained a benefit to the Plaintiff's detriment.  The assertions that Defendant may have profited in some way through implementation of front backpacks in its business

---

which the owner of the secret protects his interest from disclosure to others.").  In addition, the Seventh Circuit has held:

> Publication in a patent destroys the trade secret, because patents are intended to be widely disclosed-that is the quid for the quo of the patentee's exclusive right to make and sell the patented device.  But patent applications are not patents, and they used to be secret. However, now they have to be published after 18 months, the aim of this rule being to disseminate the knowledge revealed in the application to the inventor community so that other inventors can build upon it.  Published patent applications are in fact studied by inventors in the relevant field, and so a secret disclosed in them will ordinarily (we need not decide whether invariably) lose its status as a trade secret.  Of course a patent application that is rejected, as Siemens' was, is less likely to contain information that other inventors would want to use, but it might, since patent examiners are not infallible and a patent application might disclose some novel features or bring to light some forgotten prior art.

*BondPro Corp. v. Siemens Power Generation, Inc.*, 463 F.3d 702, 706-07 (7th Cir. 2006) (citations omitted); *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.*, 637 F.3d 604, 612 (5th Cir. 2011) (holding that under Texas law a "published patent application destroys the secrecy of its contents for trade secret purposes").

[47] *Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 622 (N.D. Ill. 2008) (internal quotations and citations omitted).

are mere bald assertions that are not supported by any well pled facts found in the complaint. Moreover, nowhere in Plaintiff's complaint is there a plausible indication that fundamental principles of justice, equity and good conscience have been violated. As such, the Plaintiff has not asserted a plausible claim for unjust enrichment and this claim will be dismissed.

### vi.    The Remaining Common Law Claims

Plaintiff asserts throughout his complaint that he is entitled to relief based on common law causes of action. The Court finds that Plaintiff has failed to allege plausible common law causes of action, because such claims are, under these circumstances, preempted by federal copyright laws, federal patent laws and/or the ITSA.[48]

## II.    Motion to Dismiss the Complaint Pursuant to Rule 12(b)(5)

The Defendant also argues that the complaint should be dismissed pursuant to Rule 12(b)(5) because the Plaintiff failed to serve the complaint on the

---

[48] *See Nash v. CBS, Inc.*, 704 F. Supp. 823, 835 (N.D. Ill. 1989) *aff'd* 899 F.2d 1537 (7th Cir. 1990) (the Copyright Act preempts "all misappropriation claims, except those similar to the examples cited in the House Report," i.e., "hot news" or data updates.); *Higher Gear Group, Inc. v. Rockenbach Chevrolet Sales, Inc.*, 223 F. Supp. 2d 953, 959 (N.D. Ill. 2002) (finding unfair competition claims based on 'reverse passing off,' where a defendant sells a plaintiff's product as his own, are preempted by the Copyright Act); *Pritikin v. Liberation Publs., Inc.*, 83 F. Supp. 2d 920, 923 (N.D. Ill. 1999) (finding Federal copyright law preempts a conversion claim where the plaintiff alleges only unlawful retention of his intellectual property rights); *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 156 (1989) (stating that "the States may not offer patent-like protection to intellectual creations which would otherwise remain unprotected as a matter of federal law."); *Transparent-Wrap Mach. Corp. v. Stokes & Smith Co.*, 329 U.S. 637, 644 (1947) ("Protection from competition in the sale of unpatented materials is not granted by either the patent law or the general law."); *Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 2d 968, 971 (N.D. Ill. 2000) (*quoting* 765 ILCS 1065/8(a)) ("Except as provided in subsection (b), [the Illinois Trade Secret ] Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret.").

Defendant.  Rule 12(b)(5) provides that a defendant may move to dismiss a complaint when a plaintiff fails to properly serve the defendant.[49]  Federal Rule of Civil Procedure 4(m) states that if service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action.[50]  The Rule continues that if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.[51]

As the Court has already concluded that Plaintiff's complaint should be dismissed  for failure to state claims upon which relief may be granted, the Court finds it unnecessary to rule pursuant to Rule 12(b)(5).  As a result, the Court denies the motion to dismiss, without prejudice.

## CONCLUSION

The Court will deny, in part, and grant, in part, the Defendant's motion to dismiss.  The Court will deny the motion, without prejudice, on the asserted basis (1) that the Plaintiff's claims are time barred by the Bar Dates, and (2) that the complaint was not served upon the Defendant.  The Court will grant the motion and dismiss the complaint with prejudice for failure to allege plausible causes of action against the Defendant.  An order will be issued.

---

[49]  Fed. R. Civ. P. 12(b)(5); Fed. R. Bankr. P. 7012(b).

[50]  Fed. R. Civ. P. 4(m); Fed. R. Bankr. P. 7004.

[51]  *Id.*